## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| | ) ) | JURY TRIAL DEMANDED |
| JUNIPER PHARMACEUTICALS, INC., CRISTINA CSIMMA, JAMES A. GERAGHTY, JENNIFER GOOD, MARY ANN GRAY, ANN MERRIFIELD, RICHARD MESSINA, NIKIN PATEL, ALICIA SECOR, CATALENT PHARMA SOLUTIONS, INC., and CATALENT BOSTON, INC., | ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on July 3, 2018 (the "Proposed Transaction"), pursuant to which Juniper Pharmaceuticals, Inc. ("Juniper" or the "Company") will be acquired by Catalent Pharma Solutions, Inc. ("Parent") and its wholly-owned subsidiary, Catalent Boston, Inc. ("Merger Sub," and together with Parent, "Catalent").

2.      On July 2, 2018, Juniper's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Catalent.  Pursuant to the terms of the Merger Agreement, Merger Sub commenced a tender offer (the "Tender Offer") to acquire all of Juniper's outstanding common

stock for $11.50 in cash for each share of Juniper common stock.  The Tender Offer is set to expire 12:00 a.m. midnight, New York City time, at the end of the day on August 13, 2018.

3.      On July 17, 2018, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Juniper common stock.

9.      Defendant Juniper is a Delaware corporation and maintains its principal executive offices at 33 Arch Street, Suite 3110, Boston, Massachusetts 02110.  Juniper's common stock is traded on the NASDAQ GS under the ticker symbol "JNP."  Juniper is a party to the Merger Agreement.

10.     Defendant Cristina Csimma ("Csimma") is a director of Juniper.

11.     Defendant James A. Geraghty ("Geraghty") is Chairman of the Board of Juniper.

12.     Defendant Jennifer Good ("Good") is a director of Juniper.

13.     Defendant Mary Ann Gray ("Gray") is a director of Juniper.

14.     Defendant Ann Merrifield ("Merrifield") is a director of Juniper.

15.     Defendant Richard Messina ("Messina") is a director of Juniper.

16.     Defendant Nikin Patel ("Patel") is a director and the Chief Operating Officer of Juniper.

17.     Defendant Alicia Secor ("Secor") is a director, and the President and Chief Executive Officer ("CEO") of Juniper.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.     Defendant Parent is a Delaware corporation and is a party to the Merger Agreement.

20.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Juniper (the "Class").  Excluded from the Class are defendants herein and

any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of the close of business on July 1, 2018, there were approximately 11,104,757 shares of Juniper common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28.     Juniper is a diversified healthcare company with core businesses consisting of its Crinone (progesterone gel) franchise and its fee-for-service pharmaceutical development and manufacturing business called Juniper Pharma Services ("JPS").  In addition, the Company seeks to use its differentiated intravaginal ring ("IVR") technology to advance a pipeline of product candidates intended to address unmet needs in women's health, through either internal development or external partnering.

29.     The Company's commercial product and product development programs utilize its proprietary drug delivery technologies, which the Company believes are suited to applications in women's health.  These technologies consist of Juniper's bioadhesive delivery system, a polymer designed to adhere to epithelial surfaces or mucosa and achieve sustained and controlled delivery of active drug product, and the Company's novel IVR technology.

30.     Juniper currently receives product revenues from Crinone, an 8% progesterone bioadhesive vaginal gel designed for progesterone supplementation or replacement as part of an assisted reproductive technology ("ART") treatment for infertile women with progesterone deficiency.  Juniper supplies Crinone to Merck KGaA internationally, and sold the rights to Crinone to Allergan, plc in the United States.  In January 2018, the Company announced the extension of the supply agreement with Merck KGaA for an additional four and a half years through at least December 31, 2024.

31.     On July 2, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with Catalent.

32.     Pursuant to the terms of the Merger Agreement, Merger Sub commenced the

Tender Offer to acquire all of Juniper's outstanding common stock for $11.50 in cash for each share of Juniper common stock.  The Tender Offer is set to expire 12:00 a.m. midnight, New York City time, at the end of the day on August 13, 2018.

33.     If the conditions to the Tender Offer are satisfied or waived, Merger Sub will be merged with and into Juniper, with Juniper surviving as a wholly owned subsidiary of Parent.

34.     According to the press release announcing the Proposed Transaction:

Juniper Pharmaceuticals, Inc. (Nasdaq: JNP), a diversified healthcare company with core businesses of its CRINONE® (progesterone gel) franchise and fee-for-service contract development and manufacturing organization (CDMO) Juniper Pharma Services (JPS), today announced it has entered into a definitive agreement with Catalent, Inc. for Catalent to acquire all of the outstanding shares of Juniper at a price of $11.50 per share in cash.

The transaction represents a total equity value of approximately $139.6 million on a fully-diluted basis, and a premium of 59.7% to Juniper's unaffected share price on January 30, 2018, the last trading day prior to the date on which Juniper announced its intention to explore strategic alternatives. . . .

Terms of the agreement

Under the terms of the merger agreement, Catalent will promptly commence a tender offer to acquire all of the outstanding shares of Juniper's common stock at a price of $11.50 per share. The closing of the tender offer will be subject to a majority of Juniper's outstanding shares being tendered in the tender offer. In addition, the transaction is subject to other customary closing conditions.

Following completion of the tender offer, Catalent will acquire all remaining shares at the same price of $11.50 per share through a second step merger. The closing of the transaction is expected to take place in the third quarter of 2018.

Rothschild & Co is acting as financial advisor and Goodwin Procter LLP is acting as legal counsel to Juniper. Chestnut Securities also provides advisory services to Juniper.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

35.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

36.    The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.

37.    The Solicitation Statement omits material information regarding financial projections and the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Rothschild Inc. ("Rothschild").

38.    The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.   Moreover, when a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39.    The Solicitation Statement fails to disclose certain financial projections that were used in Rothschild's Illustrative Discounted Cash Flow ("DCF") Analysis.   In particular, to perform its DCF analysis, Rothschild used the Company's projections of unlevered free cash flows, which were calculated as earnings before interest after tax, less increases in net working capital, plus depreciation and amortization, less capital expenditures.   The Solicitation Statement, moreover, indicates that, "[i]n calculating such unlevered, after-tax free cash flows, share-based compensation was treated as a cash expense."

40.    Although the Solicitation Statement discloses most of the line item projections used to calculate the Company's unlevered free cash flows, it misleadingly fails to disclose the Company's projections of share-based compensation.   This information is important because share-based compensation is often treated as a non-cash (rather than cash) expense in performing

a DCF analysis, and therefore would be added back in the calculation of unlevered free cash flows. Treating share-based compensation as a cash expense (as Rothschild did here) causes the Company's unlevered free cash flows, and resulting implied values of the Company, to be lower, thus misleading stockholders into believing that the merger consideration is fairer than it otherwise would appear. Accordingly, stockholders are entitled to this material information.

41.    Further, the Solicitation Statement indicates that "Rothschild performed separate discounted cash flow analyses on the Company's business and operations (excluding IVR-related milestones and royalty payments), the IVR milestone and royalty payments, and tax credits from [net operating loss ("NOL")] utilization because each stream of cash flows has significantly different profiles," and that "[t]he estimated future unlevered free cash flows used in the analyses were included in the Forecasts provided to Rothschild by the Company." Although the Solicitation Statement generally discloses the cash flow projections for the Company's business and operations (excluding IVR-related milestones and royalty payments) and the IVR milestone and royalty payments, it fails to disclose the Company's projections of NOLs for years 2018 through 2031. Instead, the Solicitation Statement merely provides stockholders with the present value of the tax savings attributable to NOL utilization, which were discounted over the forecast period. The Solicitation Statement must provide stockholders with the Company's actual projected NOLs for years 2018 through 2031 to avoid misleading stockholders.

42.    Further, the Solicitation Statement discloses certain Juniper projections for non-GAAP (generally accepted accounting principles) metrics that were used by Rothschild to perform its valuation analyses in connection with the Proposed Transaction. Specifically, the Solicitation Statement discloses non-GAAP projections of EBITDA, EBIT, Net Operating Profit After Tax, and Unlevered Free Cash Flow. The Solicitation Statement, however, fails to provide

stockholders with the necessary reconciliation of these non-GAAP projections to the most comparable GAAP measures.

43.     To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP.  Indeed, defendants acknowledge in the Solicitation Statement that:

> This non-GAAP financial information should not be considered as an alternative to operating income or net income as measures of operating performance, or as an alternative to cash flows, as a measure of liquidity. They also should not be considered in isolation from, or as a substitute for, financial information presented in accordance with GAAP. The Company's calculation of non-GAAP financial metrics may differ from others in its industry, including with respect to EBITDA, EBIT and Unlevered Free Cash Flow, and the non-GAAP financial metrics in these tables are not necessarily comparable with similarly titled metrics or information used by other companies.

44.     As such, Juniper's stockholders are entitled to a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

45.     Additionally, with respect to the probability adjusted IVR forecasts, the Solicitation Statement fails to disclose the "risk-adjusted rates provided by the Company [that] were applied to potential future clinical and regulatory development milestone payments, sales and potential future royalties based on future net sales," as well as "[t]he clinical development success rates provided by the Company."

46.     With respect to Rothschild's Illustrative Discounted Cash Flow Analysis, the Solicitation Statement fails to disclose: (i) the Company's projections of share-based compensation for years 2018 through 2023 and NOLs for years 2018 through 2031; (ii) the terminal exit multiples implied by Rothschild's analysis; and (iii) the specific inputs and

assumptions underlying the discount rates of 14.0% to 16.0% calculated and applied by Rothschild.

47.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i) Opinion of the Company's Financial Advisor; and (ii) Certain Prospective Financial Information.

48.     The Solicitation Statement omits material information regarding the background leading to the Proposed Transaction and potential conflicts of interest of the Company's management.  Specifically, the Solicitation Statement states that, throughout the sales process, representatives of Parent indicated that Parent was interested in retaining certain "key employees" of the Company following the close of the Proposed Transaction.  The Solicitation Statement, however, fails to disclose which key Company employees Parent expressed that it wanted to retain.

49.     This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.  Without this material information, the Solicitation Statement is false and misleading.

50.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i) Executive Officer and Director Arrangements Following the Merger; and (ii) Background of the Transactions.

51.     The above referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

52.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

54.     Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

55.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

56.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

57.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

58.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

59.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be

materially incomplete and misleading.

60.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

61.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

62.     Plaintiff and the Class have no adequate remedy at law.

## <u>COUNT II</u>

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

65.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

66.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

67.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and

misleading.

68.     The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

69.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Catalent)

70.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71.     The Individual Defendants and Catalent acted as controlling persons of Juniper within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as directors of Juniper and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

72.     Each of the Individual Defendants and Catalent was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

73.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as

alleged herein, and exercised the same.  The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly connected with and involved in the making of the Solicitation Statement.

74.     Catalent also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

75.     By virtue of the foregoing, the Individual Defendants and Catalent violated Section 20(a) of the 1934 Act.

76.     As set forth above, the Individual Defendants and Catalent had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

77.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

78.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Solicitation Statement that does not

contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated:  July 27, 2018

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
      Brian D. Long (#4347)
**OF COUNSEL:**                        Gina M. Serra (#5387)
                                       300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                       Wilmington, DE 19801
Richard A. Maniskas                    Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300        Facsimile: (302) 654-7530
Berwyn, PA 19312                       Email: bdl@rl-legal.com
Telephone: (484) 324-6800              Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                 *Attorneys for Plaintiff*